UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EMERALD AEROSPACE, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:22-CV-0717-B |
| | § | |
| THE BOEING COMPANY, | § | |
| | § | |
| Defendant. | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant The Boeing Company ("Boeing")'s Motion to Dismiss for

Failure to State a Claim (Doc. 10). For the reasons that follow, the Court **GRANTS in part** and

**DENIES in part** Boeing's Motion and **DISMISSES WITHOUT PREJUDICE** Plaintiff Emerald

Aerospace, LLC ("Emerald")'s claims for promissory estoppel, string-along fraud, fraud, and breach

of contract.

I.

BACKGROUND[1]

This is a contract and tort dispute between two companies in the aircraft manufacturing

industry. Emerald is a Kansas limited liability company that specializes in designing and installing

interiors of VIP aircraft, including heads-of-state aircraft. Doc. 1, Compl., ¶¶ 9, 17. Boeing is "the

---

[1] The Court draws its factual account from the allegations contained in the operative pleading, Emerald's
Complaint (Doc. 1). *See Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) ("In evaluating motions
to dismiss filed under Rule 12(b)(6), the Court must accept all well-pleaded facts as true, and view them in the light most
favorable to the plaintiff.") (alterations and internal quotations omitted).

world's largest aerospace company and [the] leading manufacturer of commercial jetliners in the world." *Id.* ¶ 1.

One of Boeing's business units, Global Services Group, manufactures and sells business jetliners to international heads-of-state. *Id.* ¶ 14. When manufacturing a jetliner for an international head-of-state, Boeing builds the aircraft itself but usually hires a specialist subcontractor to design, manufacture, and install the interior of the aircraft. *Id.* ¶¶ 2, 15. Subcontractors like Emerald engineer and design technical floor plans, select technologies, plan the project scope, and develop a high-quality sales presentation. *Id.* ¶ 2. Because these projects require extensive planning, subcontractors are typically involved "start[ing] at the proposal development stage—well before individual components are fully designed, engineered, fabricated, and installed." *Id.* ¶ 16.

This dispute arises out of Boeing's pursuit of two prime contracts with the government of India: a contract for two 777-300ER Boeing aircraft for the India Head of State (the "India HOS Project") and a contract for three 737-700IGW Boeing Business Jets for the Indian Air Force (the "IAF Project") (collectively, the "India Projects"). *Id.* ¶ 3. In January 2016, Boeing, through its Global Services Group Program Manager, Mukesh Luhar, began soliciting Emerald to help Boeing design its proposal for the India Projects. *Id.* ¶¶ 4, 19. As Program Manager, Luhar "oversaw—and had the overall responsibility and decision-making authority for—the entirety of the India Projects, including the selection of key vendors and subcontractors for the India Projects." *Id.* ¶ 20. Luhar asked Emerald to help Boeing strategize the completion of the aircraft, the engineering and technical design, and the interior configuration and specification plans. *Id.* ¶ 19. In exchange for Emerald's help in securing the prime contracts, Luhar said Emerald would be the "frontrunner" for the subcontracts to finish the jetliners' interiors. *Id.* ¶ 20.

In the following months, Emerald began helping Boeing develop its proposal for the India Projects. Boeing sought Emerald's help with interior design specifications and pricing for the India HOS Project, information it did not seek from any other contractor. *Id.* ¶¶ 22–23. Emerald and Boeing "had numerous lengthy in-person strategy meetings and telephone calls" strategizing Boeing's sales presentation for the India Projects. *Id.* ¶ 22. By mid-to-late April 2016, Boeing "began affirmatively representing to Emerald that it would be awarded the subcontracts on the India Projects in exchange for Emerald's continued services and support in obtaining the prime contracts from the Government of India." *Id.* ¶ 24. On or about April 26, 2016, Boeing and Emerald entered a Proprietary Information Agreement ("PIA") that prohibited Boeing from disclosing Emerald's proprietary information to third parties or misappropriating it for Boeing's benefit. *Id.* ¶ 25.

For the next two years, Boeing and Emerald had "countless lengthy strategy calls" and "lengthy and substantive in-person strategy meetings . . . on a regular basis" to discuss the plans for the India Projects. *Id.* ¶ 27. "Emerald provided critically important and valuable proprietary and trade secret information and services to Boeing regarding the interior configuration, design, engineering, technical, execution strategy, and scheduling concerns . . . ." *Id.* During this time, Boeing gave Emerald "repeated assurances . . . that Emerald would be compensated on the back end and would receive the subcontracts to perform the work in connection with the India Projects after the prime contracts were awarded and the subcontracts formally bid." *Id.* ¶ 30.

In late 2016, Boeing invited Emerald to participate in its formal Request for Quotation/Proposal ("RFP") process for the India HOS Project subcontract. *Id.* ¶ 31. The RFP terms and conditions stated that the process was a "competitive bid solicitation," but Luhar "repeatedly assured Emerald that the RFP process was merely a formality." *Id.* ¶ 34. In September 2017, Boeing

invited Emerald to respond to an RFP for the IAF Project. *Id.* ¶ 36. Emerald submitted a bid on

November 30, 2017. *Id.* ¶ 37. In January 2018, Boeing released a Revised RFP for the India HOS

Project, and Emerald submitted a formal bid. *Id.* ¶¶ 39, 41. After reviewing Emerald's bid for the

Revised RFP, Boeing advised Emerald that its bid "was the 'best technical, best price, and lowest

execution risk' for the subcontract on the India HOS Project." *Id.* ¶ 42.

Early in 2018, Luhar mentioned to Emerald "that another Boeing executive on an unrelated

program was pressuring him to add [GDC Technics, LTD ('GDC')] to the list of bidders for the

subcontractors on the India Projects and to steer the subcontracts to GDC." *Id.* ¶ 40. Emerald later

met with Stanley Deal, Boeing's then-president and chief executive officer of Boeing Global Services,

and raised concerns about the rumored improper interference. *Id.* ¶ 46. Deal "acknowledged the

interference, but assured Emerald that it had been dealt with." *Id.*

In early February 2018, the Government of India awarded Boeing the India HOS Project

prime contract. *Id.* ¶ 41. Despite Emerald's assistance in securing the prime contracts and Boeing's

repeated assurances that Emerald would receive the India Projects subcontracts, Boeing ultimately

awarded the subcontracts to two of Emerald's competitors, GDC and Air Works. *Id.* ¶¶ 45–51. Based

on Luhar's statements that he received pressure to steer the subcontracts to GDC and Deal's

acknowledgment of interference, Emerald asserts that "the subcontracts [were awarded] to GDC for

reasons that were anything but honest and forthright." *Id.* ¶ 51.

On March 28, 2022, Emerald filed its Complaint, asserting causes of action for quantum

meruit, promissory estoppel, sting-along fraud, fraud, and breach of contract. *Id.* ¶¶ 52–76. Boeing

filed its Motion to Dismiss for Failure to State a Claim on May 27, 2022, requesting the Court dismiss

each of Emerald's claims. Doc. 10, Mot. Dismiss, 4. The Motion is now ripe, and the Court considers it below.

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted). But the court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (alterations and internal quotations omitted).

## III.

## ANALYSIS

The Court first finds that it may not consider any of the documents in Boeing's Appendix

Supporting Its Motion to Dismiss (Doc. 12) because each document either is not central to Emerald's

claims or is not a document referenced in the Complaint. The Court further finds that Emerald has

stated a claim for quantum meruit but has failed to state a claim for promissory estoppel, string-along

fraud, fraud, or breach of contract. Accordingly, Emerald's promissory estoppel, string-along fraud,

fraud, and breach of contract claims are dismissed without prejudice.

A.       *Documents Attached to Boeing's Motion to Dismiss*

Boeing asks the Court to consider four documents when ruling on Boeing's Motion to

Dismiss: (1) a two-way PIA between Boeing and Emerald (the "Attached PIA"), (2) Boeing's RFP

to Emerald dated December 8, 2016 for the IHOS project (the "HOS RFP"), (3) Boeing's RFP to

Emerald dated September 11, 2017 for the IAF project (the "IAF RFP"), and (4) Boeing's RFP to

Emerald dated January 23, 2018 for the IHOS project (the "Revised HOS RFP"). *See* Doc. 12, Def.'s

App. The Attached PIA purports to set out the parties' rights and duties regarding the proprietary

information Emerald provided Boeing. The RFPs purport to set out the terms of the RFP processes

for the India Projects. Boeing argues that the Court may consider these documents "because those

documents are central to Emerald's claims against Boeing and referenced by the Complaint." Doc.

11, Def.'s Br., 3 n.2.

"Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper

attachments, documents incorporated into the complaint by reference, and matters of which a court

may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir.

2011) (internal quotations omitted). A court may consider documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the plaintiff's claims. *Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). Courts treat such documents as incorporated into the plaintiff's complaint. *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 & n.16 (N.D. Tex. 2011) (Lynn, J.) (citing Fed. R. Civ. P. 10(c)). Although the Fifth Circuit has not stated a test for determining whether a document is central to the plaintiff's claim such that a trial court may consider it when resolving a 12(b)(6) motion, Fifth Circuit precedent makes clear that a document is central to the plaintiff's claim only if "necessary to establish an element of one of the plaintiff's claims." *Id.* at 662.

The Court considers each document in turn.

1.      The Attached PIA

In its Complaint, Emerald refers to a PIA the parties entered on or about April 26, 2016 (the "April 2016 PIA"). *See* Doc. 1, Compl., ¶ 25. This PIA forms the basis of Emerald's breach of contract claim. *Id.* ¶¶ 71–76. Boeing claims the Attached PIA (Doc. 12, Def.'s App., 3–7) is the April 2016 PIA. Emerald argues that "the PIA [in] Boeing's Appendix is not the document referenced in Emerald's Complaint." Doc. 17, Resp., 3. For two reasons, the Court agrees that Boeing has not shown that the Attached PIA is referred to in the Complaint.

First, the contents of paragraph five of the Attached PIA differ from the alleged contents of the April 2016 PIA. The Complaint alleges, "Pursuant to Paragraph 5 of the [April 2016] PIA, Boeing agreed to protect Emerald's proprietary information and not disclose it to third-parties or misappropriate it for Boeing's own benefit." Doc. 1, Compl., ¶ 25. Paragraph five of the Attached PIA, by contrast, concerns the proper labeling of proprietary information. *See* Doc. 12, Def.'s App., 4.

Second, the only apparent date on the Attached PIA is in the footer, which reads "[Two-Way 5-12-16]." *Id.* at 3–7. The signature block contains the date that each party signed the document; however, these dates have been redacted. *See id.* at 7. As mentioned above, Emerald alleges that the April 2016 PIA was signed on April 26, 2016. The evidence before the court suggests that the Attached PIA was signed on May 12, 2016 (or alternatively December 5, 2016). Without more, the Court cannot conclude that the Complaint refers to the Attached PIA and thus does not consider the Attached PIA in evaluating the Motion to Dismiss. *See Kaye*, 453 B.R. at 662 ("[F]or a document to be incorporated into the pleadings [for consideration on a motion to dismiss] it must . . . be referred to in the plaintiff's complaint . . . .").

### 2.      The HOS RFP, IAF RFP, and Revised HOS RFP

Boeing claims that the HOS RFP, IAF RFP, and Revised HOS RFP are "central to Emerald's claims against Boeing and referenced by the Complaint." Doc. 11, Def.'s Br., 3 n.2. In its Complaint, Emerald alleges that Boeing invited Emerald to participate in three RFPs. *See* Doc. 1, Compl., ¶¶ 31, 36–37, 39. Emerald does not dispute that the HOS RFP, IAF RFP, and Revised HOS RFP are the three RFPs referenced in the Complaint. *See* Doc. 17, Resp., 4. However, Emerald disputes the centrality of these documents to its claims. *Id.* The Court agrees that the HOS RFP, IAF RFP, and Revised HOS RFP are not central to Emerald's claims.

A document is central to the plaintiff's claim only if "necessary to establish an element of one of the plaintiff's claims." *Kaye*, 453 B.R. at 662. The RFPs provide some context for Emerald's claims and may be relevant to whether Emerald was justified in relying on the promises it received from Boeing. But the RFPs are not necessary to establish an element of Emerald's quantum meruit, promissory estoppel, fraud, and string-along fraud claims; in other words, Emerald could prove its

claims for quantum meruit, promissory estoppel, fraud, and string-along fraud without the RFPs. And the RFPs are irrelevant to the breach of contract claim, which is based on the April 2016 PIA. The Court finds that the HOS RFP, IAF RFP, and Revised HOS RFP are not central to Emerald's claims and thus does not consider them at this stage. The Court now turns to Emerald's claims.

B.      *Emerald's Quantum Meruit Claim*

Emerald brings a quantum meruit claim to recover the reasonable value of its services for helping Boeing prepare its India Projects proposals. Doc. 1, Compl., ¶¶ 53–56. Emerald alleges that Boeing sought and accepted Emerald's valuable assistance with the India Projects and was reasonably notified that Emerald expected to be paid for its services. *Id.* The elements of a quantum meruit claim are:

> (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) those services and materials were accepted by the person sought to be charged, and were used and enjoyed by him; and (4) the person sought to be charged was reasonably notified that the plaintiff performing such services or furnishing such materials was expecting to be paid by the person sought to be charged.

*Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732–33 (Tex. 2018). "The purpose of this common law doctrine is to prevent a party from being 'unjustly enriched' by 'retaining the benefits of the performance without paying anything in return.'" *Id.* at 732 (alterations omitted). It is not necessary for a party bringing a quantum meruit claim to have demanded payment before rendering services. *See, e.g., PIC Realty Corp. v. Southfield Farms, Inc.*, 832 S.W.2d 610, 614–15 (Tex. App.—Corpus Christi 1992, no writ) (allowing a plaintiff who did not demand payment before providing services to demonstrate reasonable notice through evidence of industry custom and usage). In general, the payment expected "does not have to be monetary; it may be any form of

compensation." *Vortt Expl. Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 945 (Tex. 1990). This general rule is subject to an exception: "an expectation of a future business advantage or opportunity cannot form the basis of a quantum meruit claim." *Peko Oil USA v. Evans*, 800 S.W.2d 572, 576–77 (Tex. App.—Dallas 1990, writ denied).

Boeing argues that Emerald's quantum meruit claim should be dismissed because "mere expectation of a future business advantage or opportunity cannot form the basis of a quantum meruit claim." Doc. 11, Def.'s Br., 8. Further, Boeing claims that Emerald has not pleaded facts to support the inference that Boeing was reasonably notified that Emerald expected to be paid. *Id.* at 9.

The Complaint demonstrates that Emerald helped Boeing primarily in hopes of receiving a future business opportunity—the subcontracts for the India Projects. Emerald introduces the case as involving "Boeing . . . stringing along Emerald . . . with the promise of subcontract work in exchange for Emerald's valuable consulting services." Doc. 1, Compl., ¶ 1. And when "Emerald began completely reworking Boeing's proposal on the India HOS Project," it was "based on Boeing's assurance that Emerald would continue to be in the driver's seat to be awarded the subcontracts for the India Projects." *Id.* ¶ 21. Emerald states that "Boeing encouraged Emerald to continue providing those valuable services based *on the promise that Emerald would receive the subcontracts for that work* if Boeing secured the prime contracts." *Id.* ¶ 54 (emphasis added).

But Emerald also pleaded that it provided its services "in exchange for *repeated assurances by Boeing that Emerald would be compensated* on the back end *and* would receive the subcontracts to perform the work in connection with the India Projects after the prime contracts were awarded and the subcontracts formally bid." *Id.* ¶ 30 (emphasis added). At this stage, the Court must take all facts pleaded in the Complaint as true. *See Walker*, 938 F.3d at 735. Although Emerald provided its

-10-

services primarily to obtain a future business opportunity, Emerald alleges that Boeing promised Emerald compensation in addition to the award of the subcontracts. Thus, expectations of future business advantage or opportunity are not the sole basis for Emerald's quantum meruit claim.

These repeated assurances are also sufficient for the Court to infer that Boeing was reasonably notified that Emerald expected to be paid. "The 'notice' element focuses on what the recipient of the services knew or should have known at the time the services were accepted." *Myrex Indus., Inc. v. Ortolon*, 126 S.W.3d 548, 551 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). "The claimant must prove the services 'were accepted by the person sought to be charged . . . under such circumstances as reasonably notified the person . . . that the plaintiff in performing such services was expecting to be paid.'" *Id.* (alterations in original) (quoting *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)). Boeing's "repeated assurances" that it would provide Emerald compensation beyond awarding it the subcontracts for the India Projects are sufficient for the Court to infer that Boeing was reasonably notified that Emerald expected to be paid for its services. *Cf. Myrex*, 126 S.W.3d at 551 (finding no notice where the evidence established that the defendant did not expect to pay commissions for the services at issue).

Because Emerald was performing its services in part on a promise of compensation beyond receiving the subcontracts, the Court cannot conclude that an expectation of future business advantage or opportunity is the sole basis of Emerald's quantum meruit claim. And Boeing's repeated assurances that Emerald would receive compensation beyond receiving the subcontracts are sufficient for the Court to infer that Boeing was reasonably notified that Emerald expected to be compensated. The Court **DENIES** Boeing's Motion to Dismiss as to Emerald's quantum meruit claim.

C.       *Emerald's Promissory Estoppel Claim*

Emerald brings a promissory estoppel claim alleging that Boeing repeatedly promised Emerald

the subcontracts for the India Projects and that Emerald foreseeably and substantially relied on these

promises to its detriment. Doc. 1, Compl., ¶¶ 58–61. The elements of promissory estoppel are "(1)

a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the

promisee to his detriment." *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983). Boeing argues that

Emerald's promissory estoppel claim should be dismissed because Emerald's reliance on Boeing's

promises was not reasonable, justified, or foreseeable. Doc. 11, Def.'s Br., 11–15.

To prove detrimental reliance, a party's "[r]eliance on [a] promise must be reasonable and

justified." *Gilmartin v. KVTV-Channel 13*, 985 S.W.2d 553, 558 (Tex. App.—San Antonio 1998, no

pet.). Under Texas law, "[j]ustifiable reliance usually presents a question of fact. But the element can

be negated as a matter of law when circumstances exist under which reliance cannot be justified."

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 654 (Tex. 2018) (internal

citations omitted). "[R]el[iance] on a vague, indefinite promise of future business is unreasonable

as a matter of law." *Simulis, L.L.C. v. Gen. Elec. Cap. Corp.*, 439 S.W.3d 571, 577 (Tex.

App.—Houston [14th Dist.] 2014, no pet.). "In determining whether justifiable reliance is negated

as a matter of law, courts must consider the nature of the parties' relationship and the contract."

*Orca Assets*, 546 S.W.3d at 654  (alterations and internal quotations omitted).

Emerald and Boeing are two sophisticated businesses making an arm's-length transaction.

Boeing is the world's leading manufacturer of commercial jetliners. Doc. 1, Compl., ¶ 1. And while

Emerald is small by comparison, "Emerald's management team had over 200 years of combined

experience in aircraft completions." *Id.* at ¶¶ 1, 18. "In an arm's-length transaction the defrauded

party must exercise ordinary care for the protection of his own interests. . . . [A] failure to exercise reasonable diligence is not excused by mere confidence in the honesty and integrity of the other party." *Thigpen v. Locke*, 363 S.W.2d 247, 251 (Tex. 1962).

In light of the parties' relationship and the alleged agreement, Emerald's reliance on Boeing's promise of future business was unreasonable as a matter of law; however, the reason why Emerald's reliance was unreasonable changed over time. Emerald was not justified in relying on Boeing's promises made before the RFP process because these promises were indefinite. Although the parties agreed on the general subject matter—Emerald would finish the interiors of the jetliners for the India Projects—Emerald does not allege that the parties discussed the material terms before the RFP process, much less that they agreed on them. In the absence of an understanding as to the material terms, Emerald's reliance was unjustified as a matter of law. *See Simulis, L.L.C. v. Gen. Elec. Cap. Corp.*, 2008 WL 1747483, at *2 (Tex. App.—Houston [14th Dist.] Apr. 17, 2008, no pet.) (mem. op.) ("[Where t]he parties never discussed or negotiated the specific pieces of business, the price, when and for how long such transactions would occur, or any other terms[, r]elying on such promises is unreasonable as a matter of law . . . ."); *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 142 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) ("[I]n the absence of a definite promise of specific items of equipment, [the plaintiff's] reliance was not reasonable or justified.").

Emerald asserts that after Emerald submitted its RFPs, Boeing's promise was not a "vague indefinite promise of future business," *see Simulis*, 439 S.W.3d at 577, because

> the additional details of what the subcontracts would include, including the price
> Boeing would pay Emerald, the scope of work, timeline for completion, as well as the
> other details governing how the subcontracts were to be performed are set forth in
> the Statement of Work, the RFPs, and Emerald's response to same.

-13-

Doc. 17, Resp., 12. During the RFP process, Emerald asserts that it relied on Boeing's assurances "that the RFP process was merely a formality," despite language in the RFP stating that the process was a "competitive bid solicitation." Doc. 1, Compl., ¶ 34. But "Texas courts have repeatedly held [that] a party to a written contract cannot justifiably rely on oral misrepresentations regarding the contract's unambiguous terms." *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 424 (Tex. 2015). Because the RFPs unambiguously stated that the process was competitive, Emerald's reliance on an oral promise contradicting the RFPs' unambiguous terms is not justified as a matter of law.

Because Emerald's reliance on Boeing's promises was not reasonable and justified as a matter of law, the Court **GRANTS** the Motion to Dismiss as to Emerald's promissory estoppel claim.

D.      *Emerald's Fraud Claims*

Emerald brings a claim for string-along fraud, alleging that the parties had an oral agreement that Boeing would award Emerald the subcontracts for the India projects and that Boeing fraudulently induced Emerald to continue providing services under the contract. Doc. 1, Compl., ¶¶ 63–65. In the alternative, Emerald alleges that Boeing committed fraud by representing that the RFP process would be impartial and not conducting the selection in an impartial manner. *Id.* ¶¶ 67–71. Texas law establishes four elements of a common-law fraud claim:

> (1) the defendant made a material representation that was false; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and suffered injury as a result. The fourth element has two requirements: the plaintiff must show that it actually relied on the defendant's representation and, also, that such reliance was justifiable.

*Orca Assets*, 546 S.W.3d at 653 (Tex. 2018) (internal quotations and citations omitted). These elements are common to both traditional fraud claims and string-along fraud claims. *See Kajima Int'l,*

*Inc. v. Formosa Plastics Corp., USA*, 15 S.W.3d 289, 293 (Tex. App.—Corpus Christi 2000, pet. denied). Additionally, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "This requires, at a minimum, that a plaintiff plead the who, what, when, where, and how of the alleged fraud." *United States ex rel. Colquitt v. Abbott Lab'ys*, 858 F.3d 365, 371 (5th Cir. 2017) (internal quotations omitted).

      1.        <u>String-along Fraud</u>

"'String-along fraud' is a type of fraudulent inducement claim where the fraud occurs after an agreement is entered into and induces a party to continue performing throughout the course of the agreement." *Matter of Cyr*, 838 F. App'x 54, 59 n.3 (5th Cir. 2020) (citing *Int'l Bus. Machs. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 233 (Tex. 2019)). Thus, to state a claim for string-along fraud, a plaintiff must plausibly allege the existence of a contract. *See Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001) ("Fraudulent inducement . . . arises only in the context of a contract and requires the existence of a contract as part of its proof."). Emerald's claim for string-along fraud fails because Emerald has not plausibly alleged the existence of a contract between Boeing and Emerald.

There are four elements required to form a valid contract: "(1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Levetz v. Sutton,* 404 S.W.3d 798, 803 (Tex. App.—Dallas 2013, pet. denied). Agreements to enter future contracts are enforceable only if they are "specific as to all essential terms, and no terms of the proposed agreement [are] left to future negotiations." *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000). "The rules regarding indefiniteness of material terms

of a contract are based on the concept that a party cannot accept an offer so as to form a contract unless the terms of that contract are reasonably certain." *Id.*

Emerald alleges that "Boeing fraudulently induced Emerald to continue performing under their oral agreement." Doc. 1, Compl., ¶ 63. The alleged oral agreement appears to be that "Emerald would be awarded the interior completions subcontracts for the India Projects in exchange for Emerald providing its expertise and helping Boeing develop and refine the concept of operation to secure the India Projects' prime contracts from the Government of India." *Id.* ¶ 4.

Emerald does not allege that the parties negotiated or agreed to the material terms of the subcontracts for the India Projects before Boeing promised to give the subcontracts to Emerald. Because of the "indefiniteness of material terms of [the subcontract]," Emerald and Boeing "[could not] . . . form a contract" as a matter of law, and the alleged oral agreement "merely constitute[d] an agreement to agree." *See Fort Worth Indep. Sch. Dist*, 22 S.W.3d at 846. Because Emerald has not plausibly alleged the existence of a contract between Boeing and Emerald, the Court **GRANTS** the Motion to Dismiss as to Emerald's string-along fraud claim.

2.     Common-law Fraud

Emerald alleges that "Boeing committed fraud in connection with the award of the Subcontracts for the India Projects." Doc. 1, Compl., ¶ 67. Emerald alleges two fraudulent misrepresentations: first, Boeing's representation in the RFPs that it would conduct the selection process for the subcontracts fairly, impartially, and in an ethical manner; and second, Boeing's representations that Emerald would be awarded the subcontracts or otherwise be compensated for its work. *Id.* Boeing asserts that Emerald's fraud claim should be dismissed for two reasons. First, Boeing argues that Emerald does not plausibly allege reasonable and justified reliance on Boeing's

misrepresentations. Doc. 11, Def.'s Br., 21–22. Second, Boeing argues that the alleged misrepresentations in the RFPs are immaterial. *Id.* at 22–23.

> i.     *RFP representations*

Under Texas law, "[j]ustifiable reliance usually presents a question of fact. But the element can be negated as a matter of law when circumstances exist under which reliance cannot be justified." *Orca Assets*, 546 S.W.3d at 654 (internal citations omitted). "In determining whether justifiable reliance is negated as a matter of law, courts must consider the nature of the parties' relationship and the contract." *Id.* (alterations and internal quotations omitted).

Emerald alleges that the RFP process "incorporates formal terms and conditions which include representations by Boeing that it will conduct the source selection process fairly, impartially, and in an ethical and proper manner." Doc. 1, Compl., ¶ 31. Emerald claims that it "relied on these representations (as well as Boeing/Luhar's previous representations and assurances) and continued to invest hundreds of man hours assisting Boeing with [planning] and winning the prime contracts for the India Projects, as well as preparing formal bids for the subcontracts on the India Projects." *Id.* ¶ 32.

In some contexts, vague representations cannot be material as a matter of law. *See, e.g.*, *Markman v. Whole Foods Mkt., Inc.*, 2016 WL 10567194, at *7 (W.D. Tex. Aug. 19, 2016) (A company's commitments "to be a deeply responsible company" and "[to provide] ethically sourced, high-quality products and transparent information" are "precisely the type of vague, loosely optimistic affirmation that courts have repeatedly found immaterial as a matter of law" under federal securities laws). Even if a representation is not so vague as to be immaterial as a matter of law, vague representations are more difficult to falsify than specific statements. This is especially true in the

context of a fraud claim, where "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

Here, Emerald fails to plead specific facts supporting its claim that Boeing did not conduct the source selection process fairly, impartially, and in an ethical and proper manner. The Court stops short of concluding that Boeing's representations are so vague as to be immaterial as a matter of law. But Emerald's allegations are not sufficient to state a fraud claim based on the representations in the RFPs. Emerald alleges "[u]pon information and belief" that "Boeing awarded GDC the subcontract for the India HOS Project for reasons that were anything but honest and forthright." Doc. 1, Compl., ¶ 48. This conclusory allegation is not sufficient to support Emerald's fraud claim. *See* Fed. R. Civ. P. 9(b). Insofar as Emerald's fraud claim is based on Boeing's representations that the RFP source selection process would be conducted fairly, impartially, and in an ethical and proper manner, the Court **GRANTS** the Motion to Dismiss as to Emerald's fraud claim.

> ii.    *Oral representations*

As explained above in Section C, the promises that Boeing would award Emerald the India Projects subcontracts were not specific as to the material terms of the contract. Because these promises were indefinite, any reliance thereon by Emerald was unjustified as a matter of law. Insofar as Emerald's fraud claim is based on Boeing's oral representations that Emerald would be awarded the subcontracts, the Court **GRANTS** the Motion to Dismiss as to Emerald's fraud claim.

E.    *Emerald's Breach of Contract Claim*

Emerald brings a claim for breach of contract, alleging that Boeing disclosed Emerald's proprietary information to two of Emerald's competitors in violation of the parties' April 2016 PIA.

Under Texas law,[2] a breach-of-contract claim "requires the plaintiff to show (1) a valid contract, (2) performance by the plaintiff as contractually required, (3) breach by the defendant, and (4) damages due to the breach." *Harrison Co., L.L.C. v. A-Z Wholesalers, Inc.*, 44 F.4th 342, 346 (5th Cir. 2022). In support of its breach of contract claim, Emerald alleges that Emerald "provid[ed] Boeing with confidential, proprietary, and trade secret information" while helping Boeing prepare bids for the India Projects. Doc. 1, Compl., ¶ 32. "Upon information and belief, Boeing used Emerald's proprietary, confidential, and trade secret information to secure the IAF Project's prime contract and later misappropriated that information by providing it to GDC and/or Air Works in India in connection with performing the subcontract on the IAF Project." *Id.* ¶ 38.

"[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). Emerald's breach of contract claim is the type of "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements," that "do[es] not suffice" under *Iqbal*. *See* 556 U.S. at 678. Emerald has not shown that Boeing breached the April 2016 PIA, an essential element of a breach of contract claim under both Texas law and Delaware law. The Court therefore **GRANTS** the Motion to Dismiss as to Emerald's breach of contract claim.

---

[2] Boeing asserts that the April 2016 PIA contains a Delaware choice of law provision. Doc. 11, Def.'s Br., 23 n.5. The elements for breach of contract under Delaware law are similar to the elements under Texas law. *See GEICO Gen. Ins. Co. v. Green*, 2022 WL 1052195, at *5 (Del. 2022) ("Under Delaware law, plaintiffs must establish the following three elements to succeed on a breach of contract claim: (1) the existence of a contract, whether express or implied; (2) breach of one or more of the contract's obligations; and (3) damages resulting from the breach."). Because Emerald fails to state a claim under either Texas or Delaware law, the Court does not decide at this juncture which state's law applies to Emerald's breach of contract claim.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Boeing's

Motion and **DISMISSES WITHOUT PREJUDICE** Emerald's claims for promissory estoppel,

string-along fraud, fraud, and breach of contract.

**SO ORDERED.**

**SIGNED: November 3, 2022.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE